Brief 18-0576, Richard Smith, Appellant, by Jonathan Crannell, v. Integrated Management Services, LLC, Appellee, by Richard Torellio Mr. Crannell, by the way, go ahead and come on up. Before we get started, Jeff Linton will be involved in the resolution of this matter. He was unavoidably detained and will not be able to beat himself, but he has written briefs. He will listen to the oral argument tape, and he will be participating in the resolution of this matter. Very well. Thank you, Your Honor. I may have pleased the Court. Good afternoon. My name is John Crannell, and I represent Mr. Richard Smith, the appellant in this matter. Mr. Smith appeals the trial court in Will County's ruling, which granted summary judgment in favor of the defendant, on the basis, or incorrectly holding, that Mr. Smith lacked standing and improperly applying judicial estoppel. I will address each of these holdings in turn. First, with regard to standing. The doctrine of standing is intended to preclude persons who have no interest in a controversy from bringing suit and to prevent the unnecessary clogging up of the judicial system. Under bankruptcy laws, a Chapter 13 debtor has co-standing with the trustee to sue in his own name and on behalf of the estate. Mr. Smith filed this personal injury lawsuit before filing for bankruptcy. So on December 31, 2015, when he filed suit for personal injury, he had standing to sue on his own behalf. I don't think anyone is claiming otherwise. On March 14, 2017, when the plaintiff filed for Chapter 13 bankruptcy, he maintained standing to sue for his injuries, but shared that standing with the trustee of his bankruptcy estate. This court addressed the issue of standing as it applies in cases like this in its holding in Barnes v. Lawing, when it held that as long as the bankruptcy proceedings are ongoing, a Chapter 13 debtor can inform the trustee of a previously undisclosed legal claim, and unless the trustee abandons the property, the debtor may litigate the claims on behalf of the estate and for the benefit of the creditors without prior court approval. And lying doesn't matter. I'm sorry? Lying about it doesn't matter. Lying about? Whether or not there's a claim. It does not appear to, according to the holding in Barnes, which simply states that as long as before the bankruptcy matter is closed, the undisclosed asset is revealed to the trustee prior to the closure of the bankruptcy that the plaintiff does regain standing under the holding in Barnes. Mr. Smith's bankruptcy case was still ongoing on February 6, 2018, when he subsequently did disclose the previously undisclosed legal claim. Mr. Smith's attorney was appointed a special counsel to pursue that claim on behalf of the estate. Under Barnes, it is clear that Mr. Smith maintained his standing by informing the bankruptcy trustee in his ongoing bankruptcy matter of the previously undisclosed legal claim. Nothing further was required of Mr. Who was his bankruptcy attorney? No, Your Honor. Mr. Smith, at some point during litigation, moved to Arizona and retained bankruptcy counsel in Arizona. I believe Mr. Ellett and Ms. Santilli, both local to Arizona, represented him in the bankruptcy matter. And the bankruptcy is filed in? Arizona District Bankruptcy Court. In addition to the holding in Barnes, which supports the plaintiff's contention that standing was good, additionally, the second district appellate court, Knott v. Woodstock, held that where a debtor can show a reasonable possibility of a surplus from a personal injury suit after satisfying all debts in the bankruptcy matter, that the debtor has shown a pecuniary interest in the outcome of litigation and therefore has standing. In this case, Mr. Smith's bankruptcy estate totaled just about $75,000, just under $75,000, including trustee fees and attorney's fees. The personal injury lawsuit, Mr. Smith is seeking to recover approximately $550,000 in economic damages. In addition to that, he's seeking recovery for non-economic damages, including pain and suffering, loss of a normal life, both in past and future. And the total bankruptcy of the court that claimed had a value of $300,000? Well, the estimated net proceeds of a $1.2 million settlement to Mr. Smith would have been approximately $300,000 after satisfying the worker's compensation lien and after anticipated negotiation, attorney's fees, and court costs that would get us there. On August 2nd, the plaintiff, as Your Honor mentioned or referenced, the plaintiff did send a settlement demand letter to the tortfeasor, requesting $1.2 million to settle the case. It is reasonable that on a $1.2 million settlement, Mr. Smith would have had net proceeds far in excess of that of the bankruptcy estate. And therefore, under nots, he would have had standing. If there actually was a settlement at some point of the lawsuit and it turned out that the proceeds were not in excess of the debt, does that matter? Under nots, standing only exists if a reasonable possibility of a surplus can be shown. So in that case, I'm not sure there's any common law to address that head-on. I'm not sure I'm able to answer Your Honor's question. Okay. But whether we look at nots or look at the case under the lens in Barnes, it's clear that Mr. Smith did have standing and that the trial court erred in ruling that he didn't and said holding should be reversed. Mr. Smith should be permitted to continue to pursue his personal injury action for the benefit of not only the bankruptcy estate, but also for himself to the extent there would exist a surplus upon resolution. Moving on to the second reason for which the trial court granted summary judgment, which is judicial estoppel. As I'm sure Your Honors are aware, judicial estoppel is a harsh remedy intended to protect the integrity of the judicial system. It is applied to prevent a person from changing positions according to the exigencies of the moment. And isn't that exactly what your client did? Well, there's more than just that. This is the purpose of judicial estoppel. I mean, my question was, isn't that exactly what your client did? Your Honor, I don't believe so. Certainly not with the intent referenced here as far as the purpose of judicial estoppel. The reason for that is, first, my client received no unfair advantage. Second, they approved his bankruptcy plan, right? They did. The bankruptcy plan was confirmed. And had somebody not discovered this case, he could have walked away with everything in the personal injury case without anybody in the bankruptcy court in Arizona being any wiser. All of the creditors at all times under this Chapter 13 bankruptcy plan were entitled to full 100% repayment of all debts. The plan that was confirmed, once the asset was disclosed, after the plan was confirmed, nothing about the plan changed. It had absolutely no effect. And was it disclosed out of the goodness of his heart, I'm going to do the right thing, or was it disclosed because he got caught here in Illinois? It was disclosed the very second it came to light he failed to include it. I understand that your Honor could perceive that two different ways, but there are two different ways. And that's that he was lying. He gets caught up here in Illinois, so then, uh-oh, and then he goes and discloses it to the bankruptcy court. And so the plaintiff isn't denying that he took two inconsistent positions, but that's not all the test for judicial estoppel requires for it to be applied. The trial court got narrowly focused on the same issue, as to whether or not my client took two inconsistent positions, which we're not denying happened. The only prerequisite that the plaintiff is saying wasn't satisfied by clear and convincing evidence is that a benefit was received by the plaintiff and that he was successful in either proceeding. In addition to that, the court needs to exercise discretion before applying such a harsh remedy. And it's the plaintiff's position. If judicial estoppel isn't appropriate for your client, what client, what person out there would that be appropriate for? Well, Your Honor, I liken this situation to perhaps a poker game. You've got five guys sitting around a poker table.  but doesn't see the hand. Did he cheat? Arguably, maybe he tried to, right? But he gained no unfair advantage, and the integrity of the card game was completely unaffected by the attempt. So in this case, even if he had intended to game the system, the way by which he did it never would have served him any purpose. It would never have given him the undue advantage that the whole purpose of judicial estoppel is intended to prevent. Because he lied and the truth would have helped. I guess, Your Honor, what I'm saying is if we assume he was lying, it was of no avail. It was a completely inert misrepresentation. Is there any other... He told the bankruptcy court one thing, and then five days later told the Illinois court something else. How can you draw any conclusion, not an assumption, but a conclusion from those facts, that your client was lying? Your Honor, in both... What's his position? Nobody is claiming that Mr. Smith did not take two inconsistent positions, but there are four other factors required under the holding in Seymour that we're ignoring if all we do is focus on the fact that Mr. Smith did take two inconsistent positions. Well, how do we protect the integrity of the courts if we let people come in and lie and lie, and I guess say, okay, no harm will follow? That's not the way our courts are supposed to work. Isn't that the purpose of judicial estoppel to say, hey, you come in, sort it out, there's no proof, none but proof, so I've got you, that you're going to do it. And isn't the point of judicial estoppel to stop people from trying to use the court in a disingenuous way? The purpose of judicial estoppel is to protect the integrity of the judicial system and to prevent people from obtaining an unfair advantage. Where no unfair advantage can be had, the purpose of judicial estoppel would not be... So if you fail, if you lie and fail, then that's okay? If Mr. Smith had included in his bankruptcy petition that he was a cubs fan and then in his personal injury lawsuit claimed that he was a White Sox fan... But those misrepresentations have no effect. They give him no benefit, and that's the reason the Seymour Court included that requirement. Which asset would have had no effect on the outcome of the bankruptcy matter anyway? We know that because once it was disclosed, not one creditor objected, the repayment plan didn't change in any respect. Correct, Your Honor. And that brings up a very important point. The only thing that this judicial estoppel application would serve is the defendant's interest. That's the only person who receives a windfall in this situation, which is to completely evade liability. Except for the fact that the test in Seymour that was laid out by the Illinois Supreme Court hasn't been met, which means that courts can willy-nilly determine that somebody was trying to receive a benefit, even if they didn't, despite the fact Seymour requires it, applies such a harsh remedy so as to take a $1 million personal injury lawsuit away from somebody because he made a misrepresentation in a $75,000 bankruptcy debt. The two are disproportionate in this respect, particularly in light of the fact that one of the prerequisites in Seymour was not satisfied by clear and convincing evidence. But he gained the system and he didn't get punished. He was not successful in either proceeding and he received absolutely no benefit. Even if what his intent was to gain the system, he received no benefit and he was unsuccessful. In both proceedings, they're still ongoing. He has not had success in either proceeding such that any other court has ever ruled that benefits or success has been had. So what happened to his... The plan that was previously approved before this disclosure, what happened to that plan? It stayed exactly the same, except for, because of Mr. Smith's continued inability to make payments, they adjusted it, provided a moratorium. All of this was completely unobjected to, agreed upon by all parties. Payments were resumed. The term of the plan never changed, except for he was to make escalated payments after the moratorium. The plan essentially stayed the same. Nobody objected. Nobody seemed to care about the disclosure of this asset later on. The whole plan is a benefit to him. The whole process of Chapter 13 is a benefit to him. But it's not enough, Your Honor, to say that any benefit from that proceeding satisfies the fifth prerequisite set forth in Seymour. It's important that the benefit that's received by the debtor is one that's attributable to the inconsistent position he took in the first proceeding. So in this case, we have to be able to tie a benefit that he wouldn't have gotten but for his omission. We can't do that. All the defendant can point to are benefits he would have received anyway. For instance, the automatic stay, which is just that, automatic. In addition to that, being able to pay the creditors over a period of time, which he was entitled to do anyway, as that plan didn't change. We now know, with 20-20 hindsight, that the disclosure of this asset didn't change the bankruptcy plan in any respect. Counselors, two minutes. Thank you. Defendant relies on speculation and conjecture of what might have happened. What might have happened if Mr. Smith had defaulted and had been converted to a Chapter 7? Speculation and conjecture in this regard is not clear and convincing evidence, but it does bring up a very good point, and that is the one raised in Holland v. Schwann's Home Services. In that case, the Fifth District Appellate Court held that because Holland's bankruptcy was dismissed for failure to make payments, no benefit was had, and judicial estoppel was not applied. The Fifth District Appellate Court upheld that, saying that Holland, unlike the plaintiff in Burge, was not granted the discharge of any debt, and therefore the two inconsistent positions posed little or no risk or threat to the judicial integrity. This case is like that, where there is no discharge, there is no benefit, there is no success, there is very little, if any, risk to judicial integrity by Mr. Smith's inadvertent omission in his bankruptcy filings. Inadvertent? Did you ever say that? Inadvertent? Your Honor, I believe my... Can you look at these facts? I don't think anybody could believe this was inadvertent. I believe my client when he tells me that it was a misunderstanding, he didn't understand what was happening. My client is not a lawyer, he is a truck driver. I don't know how effective his assistance of counsel was in the bankruptcy court, but I know this man and I know him to be a good person. So when I do say inadvertent, I don't do so tongue-in-cheek or lightly, I do believe my client. I understand Your Honor's perception, and I get that. I suppose I have the benefit of knowing my client. The questions to him were, do you have a lawsuit pending? How can you inadvertently lie about that? I don't know how those forms were filled out. I don't know if he filled out a worksheet for his bankruptcy attorney, and then the attorney filled out that form. I don't know any of this. I wasn't there for it, and I wasn't his attorney. What I do know is that taking two inconsistent positions is only one prerequisite. How long after moving to Arizona did he file bankruptcy? Bankruptcy was filed in 2017. I believe he moved to Arizona in late 2015 or early 2016, but I don't want to misrepresent the Court. I'm not 100% sure. Thank you. Thank you, Your Honor. Thank you, Your Honor. Mr. Terriello. May it please the Court. Richard Terriello for Appleea Integrated Management Services. As the Court has pointed out, we're here today because the plaintiff on multiple occasions told lies under oath regarding the pending lawsuit against my client and what assets he had. Had my client not done its due diligence and not discovered this lawsuit, he may have gotten away with it. Fortunately, we discovered it, and that's why we're here today. What would have happened if he'd gotten away with it? He could have recovered. So it's different from now. He would have hidden this asset from his creditors. The bankruptcy would have proceeded. As we point out in our briefs, if he had defaulted and it was dismissed, it could have been converted in Chapter 7. He was hiding. This is no different than if he had a pile of cash under his bed and he failed to disclose that to the bankruptcy court. He's hiding assets, and he's not being truthful in his filings. But in Chapter 13, he pays 100% of the debt. Yes, but those payments are based on his bankruptcy estate, his filings, his disclosures, and he failed to disclose, we may disagree on the potential amount of the asset, but based on his representation in his counsel, a $1.2 million asset. That could have affected the payments that he would have had to make to his creditors in different portions of the bankruptcy. Not the amounts, though. If he had made payments, which he's shown that he couldn't at various points, they would have received 100%. But the benefit he also receives is those creditors cannot come after him for the amounts owed because of the bankruptcy. Also, he's paying these debts back interest-free, so he receives several benefits which were impacted by his lies to the bankruptcy court. There's no explanation. He's in bankruptcy court one day, and he is asked on the record, and I believe we submitted the transcript, do you have any other assets? His answer is no. Five days later, I depose him. I ask him, have you ever filed bankruptcy? The answer is no. There's an argument raised that I should have asked more questions, but I think the lie is established at that point. And then the very next day, he files additional disclosures in the bankruptcy court and doesn't disclose the lawsuit. And he can't claim that he didn't know about the lawsuit. He just sat for his deposition the day before. So this is not inadvertence or just not knowing things. This is him trying to hide, play games with the system, and as Your Honor pointed out, we need to protect the integrity of the system. You know, if it truly was a mistake, he should have come forward to his attorneys and said, you know what, I just remembered I filed bankruptcy, and that attorney asked me if I didn't, if I had, and I said no. He didn't come forward until he was caught. I deposed him, I believe it was April of 2017. My motion for summary judgment wasn't filed until December. He had eight months to clear his conscience that this truly was a mistake and come forward. He also can't claim he doesn't, he didn't know that he had to disclose lawsuits because he disclosed two lawsuits in his bankruptcy files, two collection actions. So that would also lead you to believe that, hey, I have to disclose this lawsuit against IMS. Do you agree with Mr. Crannell that the benefit has to be because of the misrepresentation that is up for? I think he just has to receive a benefit somehow based on his lies, and that is, I believe, as we pointed out, as I mentioned, it's the impact on his bankruptcy estate. His payments were set based on everything that was disclosed and not this hidden asset. So I believe Judge Rossi fairly weighed all the evidence in this matter. Putting aside his comments that the counsel pointed out, I think those are irrelevant, but he took a detailed analysis of Seymour, or the factors laid out by Seymour, and then moved on to judicial estoppel. There was no skipping of steps in this matter. Under Chapter 13, he's required to pay the maximum amount to his debtors, and that, again, is set on his bankruptcy estate and his filings. Plaintiff's reliance on Holland, I think, is misplaced. The plaintiff in Holland, the majority of that case was about a retaliatory discharge for filing a workers' compensation case, but in Holland, I believe, the timing is much different than we have in this case. In Holland, the bankruptcy was filed and confirmed before the cause of action even arose. I think that's important. Also, in Holland, there was no evidence of an intent to deceive, and we have plenty of that evidence in this matter. And nothing in Holland requires that there be a discharge for the application of judicial estoppel in a situation like this. And there was also no evidence that the plaintiff in Holland intended to omit his claim. We have clear evidence in this case that the plaintiff intended to omit the lawsuit from the bankruptcy. Plaintiff also cites to Seymour, and this Court is very familiar with Seymour, to support their argument that there was no benefit from these failures to disclose. However, Seymour didn't address this. Seymour presumed the five factors were matched, and their focus was on the intent of the debtor. And I believe they even focused on whether there were statements under oath that were made to satisfy the benefit analysis. And I believe, in the end, they found that there was no intent in Seymour, and that's why summary judgment was reversed. As we pointed out in our briefs, it's clear the plaintiff in this matter has received a benefit from his lies, and those lies should not be approved by any court. As I mentioned, Seymour, again, the key factor is the intent to deceive when applying judicial estoppel. In Seymour, they were kind of focused on inferring intent, and again, there is no need to infer intent in this matter. We have two statements under oath five days apart, completely inconsistent. The failure to disclose, even after lying under oath, he waits until he is caught and then discloses, and then he even waits another month or two after the motion for summary judgment is filed. Now, as for the standing issue, we agree that Bankruptcy Rule 6, I believe it's 009, allows co-standing with the trustee, but that's only when it's being done on behalf of the estate. By not disclosing this lawsuit, that makes it clear he was not pursuing this claim on behalf of the estate. One of the arguments they raised is the fact that counsel was appointed as special counsel for the debtor. I don't believe that speaks to standing. That speaks to his approval because, as this court knows, any professional in a bankruptcy case has to be approved by the court. The two main arguments they've raised were based on not, as counsel just mentioned, but not is distinguishable because not was a Chapter 7 bankruptcy, and we're dealing with a Chapter 13. And then counsel also cites to this court's ruling in Barnes. I believe Barnes speaks to standing in a situation where I think the remedy was for plaintiff to dismiss and then refile, and then his ability or his standing could be litigated in that theoretical new filing. I don't believe it supports plaintiff's position that he did have standing to pursue this cause of action. Your Honor pointed it out perfectly. I mean, the role of this court is to protect the integrity of the system. This isn't a situation where we have, like Seymour, where we're not sure of intent. We don't know if they really meant to deceive. This gentleman intended to deceive not only the federal bankruptcy court in Arizona, but the courts here in the state of Illinois. And one of my points I was going to make, and Your Honor already made it, is if judicial estoppel doesn't apply in this situation, when does it apply? This is a prime example of when judicial estoppel should be applied. If it's not, this gentleman's playing fast and loose with the rules will be rewarded in the end, possibly. In the future, if this ruling is reversed, plaintiffs will simply sit back with their large asset hidden, let the bankruptcy proceed, let the personal injury proceed. And if they get caught, they just say, oh, no, I was mistaken, I wasn't sure, disclose the asset, and then move on. There has to be consequences for these actions, which are more than just mistakes or inadvertent disclosures. The trial court's ruling in this matter must be affirmed to set clear guidelines and rules for litigants not only here, but anyone that wants to come to Illinois to litigate a case. I don't know if the fact that he was in Arizona, we're in Illinois, he thought he could get away with this. But the trial court must be affirmed in this matter in order to protect the integrity of the system and set clear guidelines for future litigants. I thank you for your time. I have another question for you, please. I share Justice Schmitt's outrage. I do have a question about the benefit, because I think that we have to be guided by the statute here and by the case law. The failure to disclose was a disclosure of a potential, not an actual asset. I mean, it is an asset, but the money is a potential. As far as we know, it would not have made any difference in terms of his payment schedule, would it? We don't. We're kind of trying to think back and think what could have happened. If he had timely disclosed it, the payments could have been set higher. A creditor could have come in and objected. But we can't give him the benefit of the doubt and reward him for his lies. I mean, he played fast and loose, got caught. He didn't come forward out of the goodness of his heart. I forgot it's disclosed this. Maybe it's a different situation. But it's kind of hard to look back and say, would the original filing have been different than today? It's difficult, but he did, as we pointed out in our briefs and here today, he did receive other benefits. I mean, there's the stay, the lower payments, keeping creditors away. I mean, that is an important benefit that he received. So we're trying to look back and determine back in 2017 if he disclosed this $1.2 million asset. It's difficult, but, again, it's giving him too much credit for his dishonest actions. I believe the case law and the evidence shows that Judge Rossi was right and just to apply judicial estoppel. On those grounds alone, Sermey judgment should be affirmed. And then he went on to address the standing issue. Thank you. Thank you. First, with regard to counsel's argument that documents were filed in the bankruptcy court the day after the deposition, those files do not bear Mr. Smith's signature. There's no indication as to when those documents were filled out. It's hardly conclusive proof of any intent on the part of the plaintiff. With regard to the holding in Holland not being applicable here because of different situations, Court in Holland took care to particularly state that because whether or not it was the basis for the holding, it took care to provide some guidance for courts that where there is no discharge, where a bankruptcy case is dismissed prior to discharge or prior to closure, that in that case they found that there was no benefit and no success in that proceeding. This bankruptcy hasn't been dismissed, has it? It has not been dismissed, Your Honor, but no discharge of debt had been had by Mr. Smith, the same as no discharge of debt had been had in Holland, which is part of the basis for that reasoning. Haven't courts held that when a bankruptcy court confirms a Chapter 13 plan, that the court accepts the debtor's position and provides a benefit? The only courts that have held that are Federal cases cited to by the defendant, and the plaintiff took great care in its reply brief stating why those cases are inappropriate to be relied on for various reasons, including the fact that the test that they're relying upon, where we have Seymour, there's that five prerequisite test. In those cases, some of them don't even require a benefit. Some of them don't require success in either proceeding. And so to use those cases as a basis that the same kind of rule should be applied here, it really is inapplicable here. What we do have is holdings like Holland and Seymour. Seymour says, by the way, we don't exercise a discretion first. I understand Your Honor's outrage based on your perception of the events, and I'm not going to argue that. I think that horse is fairly well dead. But what I will say is it would be improper for a court to exercise their discretion before having been completely satisfied that all five prerequisites have been met by clear and convincing evidence. The reason we require clear and convincing evidence of all of those five prerequisites is because this is recognized as a very harsh remedy. Clear and convincing evidence is not just, hey, we look back and try and figure out what could have happened or what would have happened based on speculation and conjecture. It has to actually be evidence. There are ways that counsel for the defendant could have proved by clear and convincing evidence that the outcome would have been different. He could have obtained affidavits from the creditors stating as such. No such evidence was ever introduced because no such evidence exists. The creditors found out about the undisclosed potential asset and did nothing. They didn't care. Nobody filed an objection. Nothing about the plan changed. Regarding the distinction between a Chapter 7 and a Chapter 13 bankruptcy brought up by counsel in Chapter 7, the debtor is not a debtor in possession. He's divested of all of his assets, which means that in this case a Chapter 13 debtor, who's a debtor in possession, maintains some interest in his assets. To say that standing would be more difficult for somebody who has it to begin with according to the law as opposed to somebody like in Chapter 7 where they're divested of it statutorily would be completely unfair. With regard to Barnes, counsel brings up that the case should have been refiled in order for standing to reinvest in the plaintiff. Nowhere in Barnes does that decision say that. There's no requirement of filing. All it says is that the plaintiff must disclose the previously undisclosed asset to the trustee prior to the closure of the bankruptcy estate. In this case, Mr. Smith did just that. The bankruptcy estate is still ongoing, and so is the personal injury lawsuit. With regard to judicial estoppel, it's an equitable remedy. A multitude of inequities would result if it is applied in this case. First, we will preclude the plaintiff's ability to have his day in court, to have his case heard on its merits. Well, he had his day in court. He just chose to lie. But, Your Honor, that's not the test outlined in Seymour. Again, we're looking at discretion based on whether or not the lie was intentional, and all of those things can be considered but only after all five of the prerequisites have been satisfied by clear and convincing evidence, and in this case they have not. Second, it will leave the creditors, as Your Honor pointed out, with a more insolvent creditor and trustee with a more insolvent debtor. It will preclude the workers' compensation lien holder from attempting to recover under Section 5B of the Workers' Compensation Act for benefits paid to Mr. Smith in the workers' compensation matter. It will also cause a disproportionate financial harm to the plaintiff who has a potential million-dollar case versus the $75 in debt that he was trying to repay over time through Chapter 13, and it will afford the defendant a complete windfall, which is incredibly unfair. Counsel, just one minute. The bottom line is that application of judicial estoppel in this case would fail to serve its purpose since the integrity of the judicial system, particularly as referenced. What signal will we send to the litigants if we reverse this trial, Judge? Go ahead, Your Honor. No, Your Honor, I don't think so. I think that the message that would be sent is that the 3rd District is upholding the requirements set forth by the Illinois Supreme Court in Seymour. What is the interplay between the federal and the state law here? Federal law may be considered by a state court in determining how a matter of first impression to the court should be handled. However, the state court should first look to see if there's any guidance or any decisions which would have already been decided by that state. Even though this is a whole federal procedure, bankruptcy? All indications from my research, Your Honor, indicates that, yes, this is a state court matter, and the interplay would simply be that the federal case decided by a defendant could be used as guidance if no state court guidance exists, which in this case, there's better state court guidance than federal guidance. Well, you agree we're not bound by that, even assuming that it was on all fours. We're not bound by a 5th District decision. We're not bound by a 3rd District decision. We're only bound by an Illinois Supreme Court case. Your Honor, I completely agree with that. I'd be silly not to, however, I would point out that those decisions are more applicable and offer better guidance than any federal court case cited by counsel because they at least consider the rules set forth in Seymour, and they come from the very same state that's deciding this issue here. Counsel's time. Thank you, Your Honor, for your time. Thank you both for your arguments here this afternoon. We'll take this matter under advisement. As I previously indicated to you all, Judge Litton will be participating in the resolution of this matter. Right now we'll be in a brief recess.